# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARCUS TECHNOLOGIES, LLC<br>                              Complainant<br><br>– Versus –<br><br>BATON ROUGE SHRIMP COMPANY, INC.; KINSALE INSURANCE COMPANY<br>                              Defendant | NUMBER:<br><br>SECTION:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Marcus Technologies, LLC, who respectfully brings this action seeking judgment for damages against Defendants Baton Rouge Shrimp Company, Inc. d/b/a Advanced Cold Storage ("ACS") and Kinsale Insurance Company ("Kinsale").

## PARTIES

I.

Plaintiff Marcus Technologies, LLC, is Texas limited liability company ("Marcus"). None of the members of Marcus are domiciled in the state of Louisiana.

Defendant Baton Rouge Shrimp Company, Inc. d/b/a Advanced Cold Storage is a Louisiana corporation domiciled in Baton Rouge.

Defendant Kinsale Insurance Company is a foreign insurer domiciled in Virginia, licensed to issue insurance policies within Louisiana.

**JURISDICTION AND VENUE**

II.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332. None of the members of Marcus Technologies reside within Louisiana, ACS is a Louisiana corporation, and Kinsale is domiciled in Virginia so the parties are completely diverse. The amount in controversy also exceeds seventy-five thousand dollars.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this complaint occurred in Baton Rouge within this judicial district.

**FACTS**

III.

Marcus is a protein trading and logistics company based in Austin, Texas. Marcus helps vendors move inventory; provides consistency, transparency, and leading pricing to buyers; and provides clear, actionable data and logistics and financing services to the protein industry.

IV.

Per its website, ACS purports to be a state-of-the-art cold storage facility. As of this filing, the website specifically states that ACS is "USDA, FDA, HACCP and Level 3 SQF Certified. We offer a wide array of services specialized to meet customer's needs."[1]

V.

Kinsale is an insurer who issued a Commercial General Liability policy to ACS bearing Policy Number APP80084226. That policy provides coverage for the instant claim.

---

[1] *See* http://www.brcoldstorage.com/services.html

VI.

Marcus reached out to ACS on December 18, 2019, to see if ACS could assist with repackaging beef trim. Over the course of several days, ACS represented that it would be able to rebox and blast/flash freeze the beef trim.

VII.

The parties exchanged information relative to specifications and insurance coverage. Anthony Lusco and Tanya Parker of ACS represented to Marcus that ACS was capable of handling Marcus's needs.

VIII.

The ACS website represented – and continuous to represent – that ACS was USDA certified. At all times relevant, ACS was not USDA certified.

IX.

On February 21, 25, and 27, 2020, ACS received shipments from Marcus of 8, 11, and 17 combos of beef trim, respectively. A combo is an industry term that describes a large cardboard container that rests upon a pallet. The three shipments represented a total of approximately 80,000 lbs. of beef trim. Upon receipt, ACS received Bills of Lading, Pallet Summaries, and Certificate of Analysis, which reflected that the beef trim had passed E.coli inspections. On the ACS receipt, ACS did not note any damaged cases or corrective action required.

X.

Marcus had purchased the combos from Fort Worth Meat Packers and sent them to ACS to be removed from the combos, repackaged in wax-lined boxes, and blast frozen.

XI.

Marcus had contracted to sell the 80,000 lbs. of repackaged beef trim to a buyer for $1.85/lb.

XII.

On March 3, 2020, Marcus arranged for the pickup of the first order from ACS and delivery of the order to the purchaser.

XIII.

Upon receipt of the shipment, the purchaser rejected the product because the containers were not marked with the USDA seal. The product was then returned to ACS, at Marcus's expense.

XIV.

Over the next week, Marcus awaited guidance from ACS, which was purportedly communicating with the USDA to rectify the problem.

XV.

On March 12, Dr. McKean with the USDA informed Marcus that ACS had forfeited its USDA inspection a few years prior and that, because ACS handled the food grade meat without proper licensure, the beef trim would have to be relabeled as "INEDIBLE" and resold as pet food, at a significant loss to Marcus.

XVI.

Marcus relayed this message to ACS, which refused to take responsibility for the loss it caused and instead demanded payment of an outstanding invoice before releasing the product to be sold as pet food. Despite ACS's multiple and obvious failures, Marcus paid the outstanding invoice to mitigate its losses so that the beef trim could be sold within the timeframe set forth by the USDA.

XVII.

In working out the labelling issue with the USDA, ACS admitted "We acknowledge that the product was produced without the benefit of inspection and is therefore considered adulterated." Adulterated beef is not fit for human consumption.

XVIII.

Had ACS had the technical abilities, expertise, and licensure it purported to have, the beef trim would not have been considered denatured, which means adulterated and inedible for human consumption.

XIX.

Marcus eventually sold the beef trim in two orders to a dog food producer at a significant loss.

XX.

Adding insult to injury, over the course of its dealings with ACS, Marcus received and paid multiple ACS invoices.

XXI.

Marcus made amicable demand upon ACS by letters dated November 24, 2020 and January 12, 2021. ACS has refused amicable demand.

### FIRST CAUSE OF ACTION - NEGLIGENCE

XXII.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

XXIII.

ACS had a duty to conduct itself professionally, to be honest about its qualifications, and to not denature the beef trim owned by Marcus which was placed in its care.

XXIV.

ACS breached that duty by receiving and opening the combos of beef trim without the necessary expertise or licensure.

XXV.

Because of ACS's breach of its duty, Marcus was proximately and foreseeably damaged.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

XXVI.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

XXVII.

ACS and Marcus entered into a verbal contract for the handling of the beef trim.

XXVIII.

Per the parties' agreement, ACS was to receive the combos of beef trim, break them down into smaller packages, and blast/flash freeze them.

XXIX.

A representation made part of the contract was that ACS had the requisite expertise and licenses to perform this work.

XXX.

Because that representation was false, ACS could not legally perform the work it contracted to perform and therefore breached the contract.

XXXI.

Marcus was damaged by ACS's breach.

**ALTERNATIVE THIRD CAUSE OF ACTION – UNJUST ENRICHMENT**

XXXII.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

XXXIII.

In the alternative, should the Court find that there was no contract, by accepting payment for services it could not render, ACS was enriched, and Marcus was correspondingly impoverished.

XXXIV.

The parties do not enjoy a relationship that would otherwise justify this impoverishment and enrichment.

**ALTERNATIVE FOURTH CAUSE OF ACTION – DETRIMENTAL RELIANCE**

XXXV

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

XXXVI.

In the alternative, Marcus reasonably relied upon the representation by ACS that it was USDA inspected. In reliance upon that representation, Marcus changed its position – electing to do business with ACS – to its detriment.

**FIFTH CAUSE OF ACTION – DIRECT ACTION**

XXXVII.

Plaintiff reasserts and realleges all of the foregoing paragraphs as if copied herein.

XXXVIII.

Pursuant to the Louisiana Direct Action Statute, La.R.S. § 22:1269, Marcus makes all of the foregoing claims against Kinsale directly, as an insurer whose policy provides coverage for the instant claims.

WHEREFORE, Marcus Technologies, LLC prays that its allegations be deemed good and sufficient, that this *Complaint* be assigned a cause number, section, and division, and that after all proceedings are had, the Court grant relief in its favor and against Defendants for damages for the diminution in the value of the beef trim, the cost of receiving and returning the beef trim, the amounts paid to ACS under the contract, for judicial interest from the date of demand, and for all other equitable relief to which it may be entitled.

Respectfully submitted:

**STERNBERG, NACCARI & WHITE, LLC**

*/s Graham Williams*_____
**SCOTT L. STERNBERG,** La. Bar No. 33390
**GRAHAM H. WILLIAMS,** La Bar No. 36731
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimilie: 504.534.8961
scott@snw.law  graham@snw.law
*Counsel for Marcus Technologies, LLC*